# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| HUDSON INSURANCE COMPANY, § § § *Plaintiff*, § § *v.* § § Civil Action No. SA-19-CV-137-XR ALAMO CRUDE OIL, LLC, NATHAN § MICHAEL JOHNSON, and AMTRANS § EXPRESS, LLC, § § *Defendants*. § § | |

## ORDER

On this date, the Court considered Plaintiff's Motion for Summary Judgment against Defendant Alamo Crude Oil, LLC (docket no. 17). Alamo did not respond. Even though unopposed, the Court will analyze the motions and applicable law to determine whether the requested relief is appropriate. After careful consideration, the Court hereby GRANTS Plaintiff's motion.

## BACKGROUND

In this case, Plaintiff Hudson Insurance Company seeks a declaration that it owes no duty to defend or to indemnify Defendants Alamo Crude Oil, Nathan Michael Johnson, and Amtrans Express in an underlying state court lawsuit.

### I. The Policy

Hudson issued a Non-Trucking Liability Policy ("the Policy") and an Excess Policy to Pablo Castaneda, managing member of Alamo, for the policy period of January 1, 2015 to January 1, 2016. Coverage triggered under the Policy applies to a 2003 Volvo Truck/Tractor ("the Truck")

1

while it is operated for non-commercial operations. It "supplements your commercial trucking liability coverage[.]" Docket no. 17-1 at 15. It applies, then, when the Truck is driven without a trailer attached and without any intent to perform business-related activity for the motor carrier that leased the Truck.

The Policy states that "[t]his insurance applies only to those covered autos (i) that are scheduled and designated in each Named Insured's Certificate of Insurance that is attached to and forming a part of this policy . . .; and (ii) for which at the time of accident or loss, there is a valid long term lease agreement existing between the Named Insured and a motor carrier." Docket no. 17-1 at 15. Under the Policy, the Named Insured is Castaneda and, with some exceptions, those who use the Truck with Castenada's permission. The covered auto designated in Castenada's Certificate of Insurance is the Truck. When coverage applies, Hudson has the duty to defend any insured against a claim for damages (bodily injury or property damage) caused by an accident. *Id.*

Finally, one coverage exclusion is relevant here. The Policy excludes from coverage "[b]odily injury or property damage arising from the use of a covered auto . . . while used to carry property in any business or en route for such purpose." *Id.* at 19.

**II.    Underlying Suit**

The underlying suit stems from a March 4, 2015 auto collision. This collision allegedly injured Plaintiff Artemio Sanchez, who was a pedestrian on IH-20 at the time. The defendants are Genuine Parts Company, Black Horse Carriers, Inc., Christopher Vavra, Alamo, Amtrans, and Johnson. Hudson alleges that, when Johnson and Alamo were added as defendants in the underlying suit, Hudson provided a defense. Amtrans has been defended under its Liability Policy.

When the collision happened, Johnson was driving the Truck, which was owned by Alamo and leased or rented to Amtrans. Johnson's alleged negligence in failing to apply his brakes caused

the collision. In the underlying suit, he is alleged to have acted within the course and scope of his employment for Alamo.

Hudson alleges it is not disputed that Johnson was on his way to pick up and haul a load for Amtrans; Johnson had a trailer attached to the Truck; Johnson exclusively hauled for Amtrans when he drove the Truck; and Amtrans' placard was on the Truck when Johnson drove the truck and at the time of the collision. Docket no. 1 at 8. In the underlying suit's pleadings, however, it is not alleged why Johnson was traveling westbound on IH-20 at the time of the accident.

## III. Procedural History

On February 14, 2019, Hudson filed its complaint, seeking a declaratory judgment that it has no duty to defend or to indemnify Defendants under the Policy. Docket no. 1. On May 28, Hudson moved for summary judgment against Alamo. Docket no. 17. Defendants Amtrans and Johnson were served (docket nos. 13, 14) but have not answered or otherwise responded.

## DISCUSSION

## I. Standard of Review

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the movant carries its initial burden, the

burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the non-moving party, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II. Applicable law

### a. Duty to defend

Under Texas law, an insurer's duty to defend is distinct from its duty to indemnify. *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009). The "eight corners" rule, which limits the factfinder's inquiry to the allegations in the complaint and the terms of the insurance policy, determines the duty to defend. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996). An insurer has a duty to defend only when the facts alleged in the complaint, if taken as true, have the potential to state a cause of action that falls within the policy. *Cont'l Sav. Ass'n v. U.S. Fid. & Guar. Co.*, 762 F.2d 1239, 1243 (5th Cir.), *amended on other grounds*, 768 F.2d 89 (5th Cir. 1985).

"The court must focus on the facts alleged that show the origin of the damages in the most recent complaint of the underlying litigation, and not on the legal theories or conclusions asserted." *Indian Harbor Ins. Co. v. KB Lone Star, Inc.*, 2012 WL 3866858, at *5 (S.D. Tex. Sept. 5, 2012) (citing *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)). The truth or falsity of the complaint's allegations is not relevant, and the allegations against the insured are liberally construed in favor of coverage. *Id*. There is a duty to defend if the third-party plaintiff's factual allegations in the underlying suit "potentially support a covered claim." *See Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). Whether an insurer owes a duty to defend is a question of law. *State Farm Gen. Ins. Co. v. White*, 955 S.W.2d 474, 475 (Tex. App.—Austin 1997, no writ).

There may be a limited exception, applicable here, to the "eight corners" rule. As set out in a 2016 case decided in this district, this exception is as follows:

> The Texas Supreme Court has suggested, and the Fifth Circuit has recognized, a narrow exception to the eight-corners rule. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004) ("[W]e conclude any exception would only apply in very limited circumstances: when it is initially impossible to discern whether coverage is potentially implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case."); [*GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308] (citing *Northfield* with approval); *Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469, 475-76 (5th Cir. 2009) ("We find that *GuideOne* supports our 'Erie guess' that the limited conditions of an exception to the eight corners rule exists here."). Courts may consider extrinsic evidence when 1) it is initially impossible to discern whether coverage is potentially implicated, and 2) when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case. *Id*. Extrinsic evidence is more likely to be considered when an explicit exclusion clause is at issue and the facts necessary to resolve the question are not contained in the pleadings. *See Ooida*, 579 F.3d at 476 (considering extrinsic evidence to determine whether a driver was an "employee" in the context of a fellow-employee exclusion "fit comfortably" within the narrow exception because the facts were readily ascertainable, relevant to coverage, and did not contradict allegations in the pleadings).

*Sentry Select Ins. Co. v. Drought Transportation, LLC*, 2016 WL 6236375, at *2 (W.D. Tex. Oct. 24, 2016).

The insured has the burden of establishing that the claim falls within the policy, and the insurer has the burden of establishing that an exclusion in the policy avoids or defeats coverage. *Canutillo*, 99 F.3d at 701. If the insurer shows that an exclusion applies, the burden shifts again and the insured must show that an exception to the exclusion brings the claim back within coverage. *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). The Court liberally construes any ambiguities in the policy in the insured's favor. *Canutillo*, 99 F.3d at 701. If the policy is not ambiguous, however, the factfinder must apply the one reasonable construction of the policy. *Id*.

### b. Duty to indemnify

In contrast to the duty to defend, which is based solely on the allegations of the complaint and the insurance policy, the duty to indemnify is based on the facts of the underlying litigation, as proven at trial. *City of Coll. Station v. Star Ins. Co*., 735 F.3d 332, 340 (5th Cir. 2013); *see also Canutillo*, 99 F.3d at 701. Consequently, the duty to indemnify is a narrower duty. *See Canutillo*, 99 F.3d at 701. "[T]he duty to indemnify is not dependent on the duty to defend and . . . an insurer may have a duty to indemnify its insured even if the duty to defend never arises." *D .R. Horton–Texas, Ltd.*, 300 S.W.3d at 741.

An insurer with a duty to defend must defend the insured in a suit that "alleges and seeks damages for an event potentially covered by the policy," while the duty to indemnify means the insurer will "pay all covered claims and judgments against an insured." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d at 252–53 (5th Cir. 2011) (quoting *D.R. Horton–Texas*, 300 S.W.3d at 743)). "The difference between the two is a matter of timing." *Id*.

6

The distinction between the duty to defend and the duty to indemnify is based upon the time when the duties are determined. The duty to defend arises prior to the completion of litigation, and therefore insurers are required to meet their defense obligation before the scope of the insured's liability has been determined. In contrast, the duty to indemnify arises only once liability has been conclusively determined. In other words, because the duty to defend arises whenever an insurer ascertains facts that give rise to the possibility or the potential liability to indemnify, the duty to defend must be assessed at the very outset of a case, unlike the duty to indemnify, which arises only when the insured's underlying liability is established.

*Id.*

Thus, a duty to indemnify is usually only justiciable after the underlying litigation has been resolved. *Farmers Texas Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 83 (Tex. 1997). The policy coverage may turn on facts from the underlying lawsuit and, therefore, the duty to indemnify will be contingent on the findings. *See id.* at 84. However, an insurer's duty to indemnify can be determined with the pleadings alone if "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Tex. County Mutual Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997). This *Griffin* rule "cannot be construed . . . broadly," as it is only an exception to the general rule that the underlying suit must be resolved before indemnification is justiciable and only applies when there is "no conceivable set of facts" in the underlying suit that would support a finding of a duty to indemnify. *D.R. Horton–Texas*, 300 S.W.3d at 745.

### III. Application

Hudson argues it has no duty to defend Alamo for three reasons. First, Hudson argues the stipulated facts in the parties' joint Rule 26 report (docket no. 11)—if properly considered under the exception to the "eight corners" rule—show that the business exclusion applies. Second, Hudson argues the petition in the underlying suit does not sufficiently allege facts bringing Alamo within the scope of an "insured" under the Policy. Finally, Hudson argues Alamo cannot meet its

7

burden to show it is an "insured" under the Policy. The Court concludes that the first ground is sufficient to decide this motion in Hudson's favor, so it declines to reach the other arguments.

Here, the petition in the underlying suit only alleges in conclusory terms that Johnson was acting within the course and scope of employment for Alamo; driving in furtherance of a mission for Alamo's benefit and/or was subject to Alamo's control; and working as Amtrans' agent and/or was subject to Amtrans' control. Docket no. 17-4. There are no allegations concerning why he was traveling on IH-20 or what he intended to do at his destination.

### a. Whether it is possible to discern whether coverage is potentially implicated

Hudson, then, argues that it is impossible to determine whether coverage is potentially implicated because, on the face of the pleadings, it is impossible to tell whether the business coverage exclusion applies. Hudson asks the Court to consider, as extrinsic evidence, the stipulated facts set out in the parties' Rule 26 report. Those facts are: at the time of the underlying accident, Johnson "was driving/operating the Truck and was traveling westbound on Highway 20 in Ector County; specifically, at that time, Mr. Johnson was a contract driver for Alamo and he was headed West on Highway 20 toward Pecos, Texas to pick-up and haul/carry a load for Amtrans[.]" Docket no. 11 at 2. Further, "[d]uring the time that Mr. Johnson drove/operated the truck (including at the time of the accident), he (and Alamo) could only haul/carry loads for Amtrans because the Amtrans placard (with its DOT and other identifying carrier numbers) was affixed to the Truck driver's side door." *Id.*

In deciding whether the limited "eight corners" exception applies, *Sentry Select* is instructive. In that case, the court faced largely the same issue: whether to consider extrinsic evidence in deciding whether a truck was driven or operated in the business of the motor carrier. 2016 WL 6236375, at *3-6. The underlying petition considered in *Sentry Select* similarly alleged

only that the driver was operating the truck within the course and scope of employment. Thus, the *Sentry Select* court concluded that "[i]n light of the business-use exclusion, it is impossible to discern whether coverage is potentially implicated because the underlying petition includes no allegations concerning whether the Freightliner was leased or used to further the commercial interests of a lessee." This Court reaches the same conclusion in this case. Given the exclusion for business use, the conclusory allegations in the underlying petition render it impossible to determine whether coverage is potentially implicated. The first prong of the extrinsic evidence exception is thus met.

### b. Whether the extrinsic evidence goes solely to a fundamental issue of coverage

Next, the Court must consider whether the extrinsic evidence offered goes solely to the fundamental issue of coverage and does not overlap with the merits of the underlying case. *Northfield*, 363 F.3d at 531. The *Sentry Select* case is again instructive. The extrinsic evidence in that case was driver testimony, not stipulated facts like in this case. The substance of the extrinsic evidence is similar, though—in both cases, consideration of the extrinsic evidence clearly triggers the business-use exclusion. In *Sentry Select*, the driver testified that he was on the way to pick up a load of sand when the accident occurred. 2016 WL 6236375, at *5. This brought the case within the business-use exclusion. Here, if considered, the parties' stipulation that, at the time of the accident, Johnson was driving to pick up a load for Amtrans would place this accident within the Policy's business-use exclusion. This is because, in the terms of the exclusion, the bodily injury would arise from use of a covered auto "while used to carry property in any business or en route for such purpose."

The *Sentry Select* court determined this driver testimony and the lease agreement went solely to a fundamental issue of coverage: namely, the evidence directly addressed the business-

9

use exclusion by establishing that the truck was leased and that, at the time of the accident, the driver was using it to haul sand for the lessee. *Id.* This showed that the truck was "clearly furthering the commercial interests of a lessee." *Id.* The court found that the petition did not allege how the truck was used, so "extrinsic evidence going solely to whether the Freightliner was leased to and used in the business of Circle Bar cannot overlap with the merits of those allegations." *Id.* Further, the proper focus of the business-use exclusion was on the truck, not the driver, and consideration of the extrinsic evidence did not overlap with any determination on the employment status or vicarious liability of the defendants. *Id.* at *6.

Here, also, the Court determines that the extrinsic evidence—the parties' stipulated facts—does not overlap with the underlying petition's merits. The second prong is met and the Court will consider this evidence and the "eight corners." In doing so, it is clear that Johnson was en route to carry property for Amtrans at the time of the accident. Thus, even assuming Alamo could establish coverage, Hudson meets its burden to show the business-use coverage exclusion applies. Since Alamo did not respond, it cannot meet its burden to show that an exception to the exclusion applies.

Accordingly, Hudson is entitled to a declaration that it owes no duty to defend Alamo in the underlying suit. Further, the Court finds that the same reasons that preclude a duty to defend precludes a duty to indemnify. The *Griffin* exception to the general rule that a duty to indemnify is only determined at the end of litigation thus applies. Since Hudson has no duty to defend because the business purpose exclusion applies, this exclusion likewise dictates that Hudson will not owe indemnification.

**CONCLUSION**

Hudson's Motion for Summary Judgment (docket no. 17) is GRANTED. Plaintiff is entitled to a declaration that it has no duty to defend or indemnify Defendant Alamo Crude Oil, LLC, in the underlying suit.

Defendants Johnson and Amtrans have not appeared, but Plaintiff indicates that counsel for these Defendants has contacted Plaintiff. Docket no. 22. The parties have apparently stipulated that Johnson's and Amtrans' answers are due July 29. This case remains open as to these Defendants.

SIGNED this 24th day of July, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE